IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| IMPERIAL ZINC CORP., an Illinois corporation, <br><br> Plaintiff, <br><br> vs. <br><br> GLORIA STRAUSS, individually, <br><br>     Serve at: 1806 Opeechee Beach Rd., <br>              Pacific, Missouri <br><br> ROBERT BRINSON, individually, <br><br>     Serve at: 1202 Summerpoint Ln, <br>              Fenton, Missouri <br><br> ENGINEERED PRODUCTS INDUSTRIES, L.L.C., a Missouri limited liability company, f/k/a G. Strauss Enterprises, Inc., a Missouri corporation, d/b/a St. Clair Die Casting, <br><br>     Serve at: Robert Kurilla, <br>              Registered Agent <br>              2290 Ball Drive <br>              St. Louis, Missouri 63146 <br><br>         Defendants. | Case No. 14-cv-1015 <br><br> **Jury Trial Requested** |

## **COMPLAINT**

Imperial Zinc Corp. ("Plaintiff" or "Imperial"), by its attorneys, Matthew G.

Koehler, Brown & James, P.C., *of counsel*, complains against Gloria Strauss, Robert Brinson and Engineered Products Industries, L.L.C., a Missouri limited liability company, f/k/a G. Strauss Enterprises, Inc., a Missouri corporation, d/b/a St. Clair Die Casting, states:

### PARTIES

1. Plaintiff is engaged in the business of manufacturing and selling zinc goods in Cook County, Illinois.

2. Defendant, Engineered Products Industries, L.L.C., a Missouri limited liability company, f/k/a G. Strauss Enterprises, Inc., a Missouri corporation, d/b/a St. Clair Die Casting ("St. Clair"), is engaged in the zinc die casting and aluminum die casting business at 225 Industrial Park Drive, St. Clair, Missouri.

3. Defendant, Gloria Strauss ("Strauss"), on information and belief, is an officer, director and shareholder of St. Clair.  Strauss is currently employed as Chief Executive Officer of St. Clair.  Strauss may be served at 1806 Opeechee Beach Rd., Pacific, Missouri.

4. Defendant Robert Brinson ("Brinson"), on information and belief, is an officer, director and shareholder of St. Clair. Brinson is currently employed as Vice President of St. Clair.  Brinson may be served at 1202 Summerpoint Ln, Fenton, Missouri.

## JURISDICTION AND VENUE

5. Subject matter jurisdiction is based on diversity of citizenship as plaintiff and defendants are citizens of different states and the amount in controversy exceeds $75,000 exclusive of interest and costs.

6. This Court has personal jurisdiction of Strauss and Brinson who are residents of Missouri.

7. This Court has personal jurisdiction for St. Clair because it is a Missouri limited liability company that operates from St. Clair, Missouri.

8. Venue is appropriate in the Eastern Division of the U.S. District Court, Eastern District of Missouri, because at all material times Strauss and Brinson resided within the Eastern Division, and St. Clair was doing business within the Eastern Division.

## COUNT I
### Breach of Contract (St. Clair)

9. For Paragraph 9, Plaintiff realleges and incorporates Paragraphs 1 - 8 as if fully stated herein.

10. On the following days St. Clair orally contracted with Plaintiff to purchase zinc goods that total $534,419.82:

    a. July 8, 2013,                 b. July 15, 2013,

    c. July 18, 2013,               d. July 29, 2013,

3

    e.    July 30, 2013,        f.    August 5, 2013,

    g.    August 13, 2013,        h.    August 14, 2013,

    i.    August 22, 2013,        j.    August 26, 2013,

    k.    September 10, 2013,        l.    September 30, 2013,

    m.    November 6, 2013,        n.    November 22, 2013.

11.    Pursuant to the contracts, Plaintiff manufactured zinc goods on St. Clair's behalf totaling $534,419.82.

12.    Plaintiff manufactured and delivered the zinc goods to St. Clair.

13.    St. Clair accepted the zinc goods manufactured by Plaintiff, thereby ratifying the contracts of purchase.

14.    St. Clair consumed and otherwise used the goods in the manufacturing process.

15.    As a result of the acceptance of the goods that were manufactured for and shipped to St. Clair, and after all credits and setoffs were applied by Plaintiff, St. Clair owes Plaintiff 509,857.28 for the zinc goods it contracted to purchase from Plaintiff.  St. Clair breached its contracts with Plaintiff by failing to pay for the zinc goods.

16.    Plaintiff fulfilled any and all of its obligations under its contracts with St. Clair.

17.    As a result of St. Clair breaches of contract, Plaintiff incurred damages in an amount of at least $509,857.28.

4

18. As a further result of St. Clair's breaches of contract, Plaintiff also sustained incidental damages in an amount to be proved at trial.

19. Plaintiff demanded payment from St. Clair of the $509,857.28.

20. St. Clair admitted the debt, but St. Clair refused, and continues to refuse, to remit payment.  True and correct copies of plaintiff's statement of account and invoices are attached as "Group Exhibit 1."

21. Plaintiff also claims prejudgment interest, pursuant to § 408.020 RSMo., of 9% per year, for St. Clair's vexatious and unreasonable delay of payment.

WHEREFORE, Imperial Zinc Corp., an Illinois corporation, requests judgment in its favor and against Engineered Products Industries, L.L.C., a Missouri limited liability company, f/k/a G. Strauss Enterprises, Inc., a Missouri corporation, d/b/a St. Clair Die Casting, in an amount of at least $509,857.28, plus incidental damages, pre-judgment interest and costs.

## COUNT II
### Fraudulent Misrepresentation and Concealment
**(Strauss and Brinson)**

22. For Paragraph 22, Plaintiff realleges and incorporates Paragraphs 1 - 21 as if fully stated herein.

23. Upon information and belief, on or before March 2013, St. Clair obtained a loan (the "Loan") from Fifth Third Bank ("Fifth Third"). St. Clair obtained the loan in order to finance its business operations.

24. Upon information and belief, Strauss and Brinson (St. Clair's "Officers, Directors and Shareholders") each personally guaranteed performance of the loan from Fifth Third to St. Clair.

25. Upon information and belief, in or about the last two quarters of 2013, St. Clair was insolvent, as its debts and liabilities exceeded its assets, and St. Clair's Officers, Directors and shareholders knew that St. Clair was insolvent.

26. St. Clair also had defaulted, or was about to default, on the loan from Fifth Third.

27. As a result, on information and belief, in or about December 2013, St. Clair's Officers, Directors and Shareholders began negotiating a workout agreement with Fifth Third, in order to renegotiate the terms of the Loan.

28. St. Clair hired a turnaround firm, Moglia & Associates, to negotiate the agreement with Fifth Third.

29. Upon information and belief, St. Clair also sought to effectuate an asset sale of St. Clair.

30. An asset sale would result in a cash and/or credit infusion into St. Clair, which could in whole or part be used to pay down the Loan from Fifth Third and, thereby, reduce the amount of the loan indebtedness.

31. In or about July 2013, and in August, September, and November of 2013, despite being aware that St. Clair was insolvent and was attempting to sell its assets, St. Clair's Officers, Directors and Shareholders each personally ordered zinc goods from Plaintiff, or directed one or more of St. Clair's employees or agents to order zinc goods from Plaintiff.

32. Upon information and belief, upon ordering the goods from Plaintiff, at the direction of the Officers, Directors and Shareholders of St. Clair, St. Clair's agents promised and represented to Plaintiff that St. Clair would pay for the goods within 30 days.

33. Plaintiff reasonably relied on the representations made by the agents of the Officers, Directors and Shareholders that St. Clair would pay for the goods.  Prior to placing the orders at issue, a course of dealings had existed between Plaintiff and St. Clair, where St. Clair had timely paid for goods previously sold and delivered by Plaintiff.  Consequently, Plaintiff had extended 30-day terms to St. Clair.

34. However, at the time of ordering the zinc goods from Plaintiff (Group Exhibit 1), the Officers, Directors and Shareholders of St. Clair had no present or future intention of paying for the goods, and their promises of payment were materially false.

The Directors, Officers and Shareholders' promises of payment were made as part of a pattern, practice and scheme to defraud Plaintiff, as set forth in the following allegations.

35. Upon information and belief, upon ordering the goods and promising payment within 30 days, the Directors, Officers and Shareholders of St. Clair concealed from Plaintiff that (a) St. Clair was insolvent; (b) they had begun formally negotiating a workout agreement with Fifth Third; (c) Fifth Third sought to, or was in the process of, foreclosing on its collateral (St. Clair's assets) due to St. Clair's failure to pay its loan; (d) St. Clair was in the process of selling its assets to pay down the Loan from Fifth Third; (e) St. Clair had lost terms with other vendors and suppliers and was paying vendors and suppliers COD due to its insolvency; (e) St. Clair would not, and could not, pay for the goods sold and delivered by Plaintiff; and, (f)  the Directors, Officers and Shareholders of St. Clair were personally responsible for guaranteeing the Loan from Fifth Third.

36. St. Clair's Officers, Directors and Shareholders concealed the above material facts from Plaintiff, and induced Plaintiff into selling goods to St. Clair, for the secret purpose of artificially maintaining and inflating St. Clair's assets in the eyes of its lender, Fifth Third, and any asset purchaser.

37. The Directors, Officers and Shareholders required Plaintiff's zinc goods in their manufacturing process in order resell zinc die casting and aluminum die casting

8

products to its customers.  Without Plaintiff's zinc, St. Clair could not manufacture its own goods for sale to St. Clair's customers and, consequently, would have no receivables and no income as a going concern.  By maintaining and inflating the assets of St. Clair, St. Clair would appear financially stable to both its lender, Fifth Third, and any asset purchaser.

38. By appearing financially stable to Fifth Third, the Directors, Officers and Shareholders of St. Clair sought to obtain the highest purchase price for the assets of St. Clair at an asset sale, thereby reducing their own personal liability under their personal guaranties of Fifth Third's Loan to St. Clair.  Despite seeking the highest price for the assets, it was clear that no asset sale would yield funds sufficient to both repay the Fifth Third Loan and Plaintiff.

39. Contemporaneous with, and subsequent to, the Directors, Officers and Shareholders of St. Clair contracting for the purchase of Plaintiff's goods, Fifth Third had a first priority, perfected lien on all of the inventory and personal property of St. Clair.  That lien would include all funds from an asset sale.

40. Contemporaneous with St. Clair contracting for the purchase of Plaintiff's goods, the Directors, Officers and Shareholders knew that if Fifth Third foreclosed on the Loan to St. Clair, any and all of St. Clair's assets, including Plaintiff's goods, would be sold to satisfy the obligation to Fifth Third.

41. The Directors, Officers and Shareholders also knew that if Fifth Third foreclosed on the loan, Plaintiff would not be paid for the goods, but their liability under their personal guaranties would be eliminated or reduced.

42. Further, when Plaintiff made demand on St. Clair for payment for goods, the Officers, Directors and Shareholders of St. Clair promised immediate payment.

43. The Directors, Officers and Shareholders' promises of immediate payment were false when made.

44. Due to the course of dealings between the parties, Plaintiff reasonably relied on the Directors, Officers and Shareholders' promises of immediate payment and refrained from filing suit against St. Clair.

45. The Directors, Officers and Shareholders misrepresented immediate payment in order to forestall Plaintiff's lawsuit.  The Directors, Officers and Shareholders knew that if Plaintiff filed suit, Fifth Third would receive notice of the suit.

46. They also knew that the pendency of Plaintiff's suit could adversely affect the asset sale and their liability under their personal guaranties to Fifth Third.

47. The Directors, Officers and Shareholders also knew that Plaintiff's suit could also result in suits by Fifth Third to enforce the personal guaranties.

48. On December 31, 2013, unbeknownst to Plaintiff, Fifth Third conducted a foreclosure and sale of St. Clair's assets.

49. At the sale, Fifth Third was the sole bidder for the assets of St. Clair. Fifth Third did not assume the liabilities of St. Clair, including Plaintiff's claim. The asset sale yielded no surplus to satisfy the debt to Plaintiff.

50. On information and belief, the asset sale eliminated or reduced the amounts owed by St. Clair's Directors, Officers and Shareholders on their personal guaranties to Fifth Third.

51. Plaintiff has demanded payment from St. Clair and from the Officers, Directors and Shareholders but they have refused, and continue to refuse, to pay Plaintiff for the goods sold and delivered.

52. For the reasons set forth above, the Directors, Officers and Shareholders' misrepresentations and concealment of material facts, and conduct, were egregious under the circumstances.

53. As a direct result of the Directors, Officers and Shareholders' fraudulent misrepresentations, concealment and wrongful conduct, Plaintiff sustained damages, including, but not limited to, at least $509,857.28 for goods sold and delivered, plus incidental damages.

54. Plaintiff also claims pre-judgment interest, pursuant to § 408.040 RSMo., due to the tortious conduct by Strauss and Brinson as described herein.

55. Plaintiff also claims punitive damages due to the fraud perpetrated by Strauss and Brinson (and attorneys' fees as a component thereof).

WHEREFORE, Imperial Zinc Corp., an Illinois corporation, requests judgment in its favor and against defendants, Gloria Strauss and Robert Brinson, in an amount of at least $509,857.28, plus incidental damages, punitive damages of at least $100,000, pre-judgment interest, and costs.

## COUNT III
### Intentional Interference with Contract
**(Strauss and Brinson)**

56.  Plaintiff realleges and incorporates Paragraphs 1 - 55 as Paragraph 56 of Count III as if fully stated herein.

57.  There existed a valid and enforceable contract between Plaintiff and St. Clair.

58.  St. Clair's Officers, Directors and Shareholders were aware of the contractual relationship between Plaintiff and St. Clair.  St. Clair's Officers, Directors and Shareholders, or their agents at their direction, ordered the goods at issue and negotiated the terms of the contracts for the purchase of Plaintiff's goods.

59.  St. Clair's Officers, Directors and Shareholders intentionally, unjustifiably and without privilege, induced St. Clair to breach its contracts with Plaintiff.  In refusing, on behalf of St. Clair, to pay Plaintiff for the goods sold and delivered, St. Clair's Officers, Directors and Shareholders acted solely out of self-interest.  They stood

to gain financially if St. Clair did not pay for the goods and was able to use them to reduce their liability under their personal guaranties.

60. Further, St. Clair's Officers, Directors and Shareholders' conduct harmed St. Clair. As a result of their refusal, on behalf of St. Clair, to pay Plaintiff for the goods, St. Clair will be required to defend this suit, and will be required to stand trial, due to the conduct of St. Clair's Officers, Directors and Shareholders.

61. St. Clair breached its contract with Plaintiff because of the wrongful acts of St. Clair's Officers, Directors and Shareholders.

62. As a direct result of the Directors, Officers and Shareholders' intentional interference with St. Clair's contracts with Plaintiff and wrongful conduct, Plaintiff sustained damages, including, but not limited to, at least $509,857.28 for goods sold and delivered, plus incidental damages.

63. Plaintiff also claims pre-judgment interest, pursuant to § 408.040 RSMo., due to the tortious conduct of Strauss and Brinson.

64. Plaintiff also claims punitive damages in an amount in excess of $100,000 (and attorneys' fees as a component thereof), due to the tortious interference with Plaintiff's contracts with St. Clair.

WHEREFORE, Imperial Zinc Corp., an Illinois corporation, requests judgment in its favor and against defendants, Gloria Strauss and Robert Brinson, in an amount of at

least $509,857.28, plus incidental damages, punitive damages of at least $100,000, pre-judgment interest, and costs.

## COUNT IV
### Unjust Enrichment
**(Strauss and Brinson)**

65. For Paragraph 65, Plaintiff realleges and incorporates Paragraphs 1 - 64 as if fully stated herein.

66. Plaintiff sold and delivered goods to St. Clair totaling $534,419.82 and, after all credits and setoffs were applied by Plaintiff, $509,857.28 remains owing to Plaintiff from St. Clair. (Group Exhibit 1).

67. St. Clair never paid Plaintiff for the zinc goods.

68. The zinc goods retained by St. Clair were procured by way of fraud, intentional interference with contract and unjust conduct, for the secret purpose of eliminating or reducing amounts owed by the Directors, Officers and Shareholders under their personal guaranties of Fifth Third's Loan to St. Clair.

69. Under these circumstances, St. Clair's Officers, Directors and Shareholders' retention of the benefit from Plaintiff's goods is unjust. For the reasons set forth in Count II, the retention and use of Plaintiff's goods, acted to extinguish or reduce the liability of St. Clair's Officers, Directors and Shareholders under their personal guaranties and acted to facilitate or enable the asset sale to Fifth Third.

70. As a direct result of the unjust enrichment, Plaintiff is entitled to the value of the actual benefits received by St. Clair's Officers, Directors and Shareholders stemming from the use of Plaintiff's goods.

WHEREFORE, Imperial Zinc Corp., an Illinois corporation, requests judgment in its favor and against defendants, Gloria Strauss and Robert Brinson, in an amount in excess of $509,857.28, to be proved at trial.

## COUNT V
### Unjust Enrichment (St. Clair)

71. For Paragraph 71, Plaintiff realleges and incorporates Paragraphs 1 - 70 as if fully stated herein.

72. Plaintiff sold and delivered goods to St. Clair totaling $534,419.82 and, after all credits and setoffs were applied by Plaintiff, $509,857.28 remains owing to Plaintiff from St. Clair.  (Group Exhibit 1).

73. St. Clair never paid plaintiff for the zinc goods.

74. Plaintiff's zinc goods were procured by fraud, intentional interference with contract and unjust conduct, for the secret purpose of eliminating or reducing amounts owed by the Directors, Officers and Shareholders under their personal guaranties of Fifth Third's Loan to St. Clair.

75. Plaintiff demanded that St. Clair pay for the goods.

76. Despite Plaintiff's demands, St. Clair refused, and continues to refuse, to pay Plaintiff for the goods.

77. Under these circumstances, St. Clair's retention of the benefit from Plaintiff's goods is unjust.

78. As a direct result of the unjust enrichment, Plaintiff is entitled to the value of the actual benefits received by St. Clair stemming from the use of Plaintiff's goods.

WHEREFORE, Imperial Zinc Corp., an Illinois corporation, requests judgment in its favor and against Engineered Products Industries, L.L.C., a Missouri limited liability company, f/k/a G. Strauss Enterprises, Inc., a Missouri corporation, d/b/a St. Clair Die Casting, in an amount in excess of $509,857.28, to be proved at trial.

## COUNT VI
## Breach of Fiduciary Duty
### (Strauss and Brinson)

79. For Paragraph 79, Plaintiff realleges and incorporates Paragraphs 1 - 78 as if fully stated herein.

80. Pursuant to Missouri common law, Strauss and Brinson owed fiduciary duties to Plaintiff.

81. As the Directors, Officers, and Shareholders of St. Clair, Strauss and Brinson are duty-bound and entrusted to ensure that Plaintiff's zinc goods are not improperly withheld. That duty includes Strauss and Brinson's obligation to not

improperly retain and utilize Plaintiff's zinc goods in St. Clair's business, or to use Plaintiff's zinc goods, for the purpose of satisfying debt obligations to its secured creditors, without ever intending to repay Plaintiff for said zinc goods.

82. Upon information and belief, Strauss and Brinson each personally ordered zinc goods from Plaintiff, or directed one or more of St. Clair's employees or agents to order zinc goods from Plaintiff at a time when St. Clair was unable to meet its outstanding debt obligations and after St. Clair had begun negotiating a workout agreement with Fifth Third. St. Clair represented to Plaintiff that it would pay for the zinc goods within 30 days.

83. St. Clair, through a course of dealings that had existed between Plaintiff and St. Clair, induced Plaintiff to deliver the goods to St. Clair where St. Clair had timely paid for goods previously sold and delivered by Plaintiff.

84. Upon information and belief, Strauss and Brinson willfully, fraudulently, and intentionally accepted Plaintiff's zinc goods without any intention of repayment to Plaintiff.

85. Instead, Strauss and Brinson, in their capacity as officers, directors and shareholders of St. Clair, intended to use Plaintiff's zinc goods for their own personal gain in order to reduce the liability on their personal guarantees on the Loan from Fifth Third.

86. Strauss and Brinson put their own personal interests ahead of Plaintiff and St. Clair's business relationship, to the financial detriment of Plaintiff.

87. Strauss and Brinson undertook to act as fiduciaries for Plaintiff when they also had a direct financial interest in reducing their personal guarantees on the Loan from Fifth Third, which created an irreconcilable conflict of interest.

88. Nowhere did Plaintiff authorize St. Clair to hold its zinc goods for the purpose of selling or otherwise utilizing those assets to satisfy its loan obligation from Fifth Third and thereby reducing Strauss and Brinson's personal guarantees on the Loan.

89. Strauss and Brinson's actions, as aforesaid, are in violation of their fiduciary duties to Plaintiff and have depleted Plaintiff's assets, its market value, and its creditworthiness, solely and unjustly for the benefit of Strauss and Brinson and at the expense of Plaintiff, causing Plaintiff financial strain. Irreparable injury is threatened because of Strauss and Brinson's fraudulent and unauthorized actions.

WHEREFORE, Imperial Zinc Corp., an Illinois corporation, requests judgment in its favor and against defendant, Engineered Products Industries, L.L.C., a Missouri limited liability company, f/k/a G. Strauss Enterprises, Inc., a Missouri corporation, d/b/a St. Clair Die Casting, in an amount in excess of $509,857.28, to be proved at trial.

## COUNT VII
## Action on Account (St. Clair)

90.     For Paragraph 90, Plaintiff realleges and incorporates Paragraphs 1 - 89 as if fully stated herein.

91.     On July 8, July 15, July 18, July 29, July 30, August 5, August 13, August 14, August 22, August 26, September 10, September 30, November 6, and November 22, 2013, St. Clair orally contracted with Plaintiff to purchase zinc goods in the amount of $534,419.82.

92.     Pursuant to St. Clair's requests, Plaintiff manufactured zinc goods on St. Clair's behalf

93.     Plaintiff then delivered the zinc goods to St. Clair.

94.     Imperial charged St. Clair $534,419.82for the zinc goods manufactured for, and delivered to, St. Clair.

95.     The reasonable cost for the zinc goods manufactured for, and delivered to, St. Clair was $534,419.82.

96.     St. Clair never objected to any of the invoices, statements of account of demands for payment.

97.     Instead, on various occasions, St. Clair admitted the debt.

98.     After all credits and setoffs were applied by Plaintiff, Plaintiff has been damaged in an amount in excess of $509,857.28, as a result of St. Clair's failure to pay debts due and owing from Plaintiff's manufacture and delivery of the zinc goods.

19

99. Plaintiff also claims prejudgment interest, pursuant to § 408.020 RSMo., of 9% per year, for St. Clair's vexatious and unreasonable delay of payment.

WHEREFORE, Imperial Zinc Corp., an Illinois corporation, requests judgment in its favor and against defendant, Engineered Products Industries, L.L.C., a Missouri limited liability company, f/k/a G. Strauss Enterprises, Inc., a Missouri corporation, d/b/a St. Clair Die Casting, in an amount in excess of $509,857.28, to be proved at trial.

**Jury Trial Requested**

Plaintiff requests a jury trial for its causes of action against Defendants.

Respectfully submitted,

BROWN & JAMES, P.C.

/s/ *Matthew G. Koehler*

---

Matthew G. Koehler, MO #48760
800 Market Street, Suite 1100
St. Louis, Missouri 63101
Phone: (314) 421-3400
Fax: (314) 421-3128
mkoehler@bjpc.com
*Attorneys for Plaintiff Imperial Zinc Corp.*